**Joseph E. HUDAK, Plaintiff,**

v.

**Robert WOODS, Michael S. Geisler and Richard O'Brian, Defendants.**

**Civ. A. No. 87–1999.**

United States District Court, W.D. Pennsylvania.

July 23, 1990.

See also 91 B.R. 718.

Joseph Hudak, Pittsburgh, Pa., pro se.

Michael Geisler, Pittsburgh, Pa., for defendants.

Robert Woods, Pittsburgh, Pa., pro se.

## MEMORANDUM OPINION

LEE, District Judge.

The matters before the Court for disposition are the "Exceptions to Master's Report" of the defendant Robert Woods (Woods) [1] and "Exceptions to Master's Second Report and Recommendation" of the defendant, Michael S. Geisler (Geisler).

The Special Master, Robert L. Federline, was originally appointed by an Order of this Court (Rosenberg, J.) dated December 22, 1988, wherein Woods, Geisler and Richard O'Brian, who is not involved in the matters presently before the Court, were either enjoined from certain conduct or ordered to perform certain acts.

An appeal was taken by Woods, Geisler and O'Brian.

Following full consideration of the appeal, the Court of Appeals affirmed, with some modifications, the Order of December 22, 1988.

On July 26, 1989, this Court (Rosenberg, J.) issued an Order modifying the Order of December 22, 1988, in accordance with the June 28, 1989, Order of the United States Court of Appeals for the Third Circuit.

Paragraph 6 of the Order of July 26, 1989, provides:

"6. Within 15 days of the date of this order, Woods shall deposit with the Clerk of Court the sum of $10,000 in cash or certified funds. This fund shall be used for costs and expenses for those of the Hudak bankruptcy and divorce cases requiring filing costs and other litigation expenses as well as for the payment of the costs and fees of any substitute counsel appointed by the court or the Master on any of the Hudak bankruptcy or divorce cases and for the payment of the Master's fees and expenses. Woods shall provide necessary funds to maintain or replenish this account at the level of $10,000 at all times by supplying such funds to the Clerk of Court in cash or certified form within 24 hours of notice of this court or of the Master. Any funds remaining when these costs and expenses have been paid shall be returned to Woods;"

Paragraph 7 of the Order of July 26, 1989, provides:

"7. Woods shall provde (sic) all the funds necessary for the Hudak bankruptcy and divorce cases except for those which Geisler shall be directed to provide for furthering all the cases to their completion. Such amounts shall be presented for payment of such expenses to the Clerk of Court and shall be paid only upon approval of this court after recommendation of the Master;"

In that same Order, Robert L. Federline, Esquire, was appointed as a Master of this Court pursuant to Federal Rule of Civil Procedure 53, and not only was delegated the authority and duty of supervising compliance with that Order and reporting on compliance to the Court, but also was specifically delegated the authority to recommend that any party be held in contempt should there be a non-compliance with the Order, including

"specifying recommendations for appropriate relief as a result of any failure to comply with this Order and any actions taken in contempt of this Order."

Because of Woods' subsequent failure to pay the required funds to the Clerk of Court, the plaintiff, Joseph E. Hudak, re-

---

[1]. The Exceptions were filed by Woods, pro se, and pertain to the "Master's First Report." However, Woods did file a brief, pro se, which is mistakenly entitled "Brief in Support of Exceptions to Master's Second Report and Recommendation."

quested the Master to hold Woods in criminal contempt of the Order of July 26, 1989.

The Special Master denied the request of Hudak to prosecute Woods for criminal contempt but scheduled a contempt hearing to address the question of Woods' failure or refusal to pay the $10,000 deposit required of him.

After a full hearing, the Master entered the "Master's First Report" wherein he found, inter alia:

"16. Woods has failed to abide by or comply with this purgation Order (Order of July 26, 1989).

"17. Woods' failure or refusal to pay the $10,000 to the Clerk of Courts is unexcused and without justification."

At the hearing, Woods appeared without counsel and notwithstanding his being advised by the Master that his decision could lead to his incarceration, nevertheless, persisted in his election to represent himself.

The Master found that while Woods raised only one defense, that is his inability to pay, no evidence concerning his inability to pay and no evidence which would conflict with or contradict the prior findings of the Court (Rosenberg, J.) that Woods had the ability to make the payments ordered by the Court, was adduced by Woods.

In conclusion, the Master recommended that Woods be incarcerated until he complied with Paragraph 6 of the Order of July 26, 1989. In addition, the Master recommended that Woods be required to file a complete listing of all assets which he holds either individually, jointly with any other person or corporation or which may be held in the name of any corporation in which he has an interest and whether or not such assets are titled in his name or in names of another or whether under veil or pseudonym names.

This case was reassigned to Honorable William Standish who recused and the case was thereupon reassigned to this member of the Court.

This member of the Court held a full hearing on May 31, 1990, on the Exceptions of both Woods and Geisler to the Master's Reports.

Woods again appeared without counsel and not only did he not produce any evidence of indigency on his part, to the contrary, the testimony he chose to give concerning his assets indicated that he had not made a full disclosure of all of his assets in a list submitted to the Master. In fact, he testified about additional assets and property in Somerset County and a fund created by rents collected which had not been reported by him in either his prior testimony or his report of assets.

Woods did testify that he had paid the sum of $3,103.70 into the Clerk of Court on April 5, 1990, but was financially unable to pay the balance of the required funds into Court.

Moreover, Woods again asserted his Fifth Amendment privilege in response to various questions concerning his involvement in certain businesses, allegedly, because of an IRS investigation of his and his wife's affairs.[2] While he claimed that he had no income, Woods admitted that he spends an inordinate amount of time on his wife's businesses, including a coal business he had allegedly previously transferred to her in 1982.

In the "Master's Second Report and Recommendation," the Master found that Geisler failed to comply with the obligations imposed upon him by the Order of July 26, 1989, as well as the request of the Master for reports on cases which Geisler is handling, and that no excuse "has been proffered by Michael Geisler for his failure to comply with the request for information of the Master or with the Order of July 26, 1989."

At the hearing before this Court, Geisler testified that he has attempted a good faith compliance with the Master's request, but because of the nature of the case load and because he is working without compensa-

**2.** In Paragraph 4 of his Exceptions to the Master's Report, Woods alleges: "The defendant, Robert Woods, rightfully refused to answer questions pertaining to his businesses because of an IRS investigation of his management of his wife's businesses. This was done pursuant to his Fifth Amendment privilege against self-incrimination."

tion, complete compliance was not practical or indicated.

The Master recommended that sanctions be imposed on Geisler either in the form of a daily fine for each day in which he continues to fail to have filed full and complete reports (such fines to be used to pay costs and expenses in this case—such costs and expenses to include, but not necessarily to be limited to, Masters' fees, Court costs and reimbursement of any client funds which may be necessary) or, in the alternative, that Geisler be imprisoned until such time as he complies with the reporting requirements ordered by this Court, or, that such other sanctions be imposed as to the Court seem right and proper under the circumstances and as designed to compel compliance with this Court's Order.

### Findings of the Court Re: Master's First Report

1. The first report filed by the Master in the above case is found to be based upon credible facts and is therefore confirmed and adopted by this Court.

"Rule 53(e)(2) of the Federal Rules of Civil Procedure provides that 'the Court shall accept Master's Findings of Fact unless clearly erroneous.'" *NLRB v. Local 825 A.B.C.D. Intern. Union etc.*, 659 F.2d 379 (3d Cir.1981).

■ The party objecting to Master's Findings, carries burden of proving them to be clearly erroneous. *Ohio, Chemical and Atomic Workers Inter. Union, AFL–CIO v. NLRB 1976*, 547 F.2d 575, 178 U.S. App.D.C. 278 (1976) cert. denied, 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977).

■ 2. The Court finds that Robert Woods is in contempt of court because of his failure to comply with the Order of this Court dated July 26, 1989, at Paragraph 6 which requires Woods to deposit $10,000 with the Clerk of Court in cash or certified funds for specified purposes.

■ 3. Woods' invocation of the Fifth Amendment both at the hearing before the Special Master and the hearing before this member of the Court, with regard to questions concerning his and his wife's business affairs, is a basis for an inference against him with regard to his ability to pay such money into the Clerk of Court. *See Baxter v. Palmigian*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) where the Court stated at 425 U.S. at 318, 96 S.Ct. at 1558:

> "Our conclusion is consistent with the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to production evidence offered against them: the amendment 'does not preclude the inference where the privilege is claimed by a party to a civil cause.' 8 *Wigmore, Evidence*, 439"

Cf. *United States v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521, rehearing denied, 462 U.S. 1112, 103 S.Ct. 2466, 77 L.Ed.2d 1342 (1983), where the defendant in a contempt proceeding against him invoked his Fifth Amendment privilege. The Supreme Court stated:

> "The fact that his (the defendant's) refusal to come forward with such evidence was accompanied by a claim of Fifth Amendment privilege may be an adequate reason for the court's not compelling him not to respond to cross-examination at the contempt hearing, but the claim of privilege is not a substitute for relevant evidence."

■ 4. There was no competent evidence produced by Woods at the hearing before this member of the Court which would support his sole defense that he is financially unable to pay the required funds into Court.

This Court finds Woods' testimony in this regard to be without credibility, particularly since he testified that he spends an inordinate number of hours per day managing the business affairs of his wife, but that he receives no income or salary for these efforts.[3]

---

**3.** With regard to disbursement of moneys by or on behalf of Woods, the following allegations are contained in his Exceptions to the Master's Report:

It is notable that in Footnote 2 of the Opinion of the Court of Appeals, it is stated:

"The nominal petitioner (a petition in the Bankruptcy Court for the Western District of Pennsylvania seeking the involuntary bankruptcy of Hudak under Chapter 7) was Geraldine Woods, but the address listed in the petition was the business office of her husband. Further, Geraldine Woods did not sign the actual petition filed with the court. Moreover, Geraldine Woods testified at trial that her husband conducted all of his business affairs under her name, that she often did not read the papers she signed, and that her husband 'handled everything.'..."

■ 5. The Court finds that the list of assets submitted by Woods to the Master is insufficient and therefore, Woods will be required to make a full disclosure of his financial condition. In its Opinion, the Court of Appeals commented that while financial disclosure was not warranted by the provision in Paragraph 8 of this Court's Order of December 22, 1988, nevertheless,

"If, in the future, Woods objects to contribution on the ground that he is unable to pay, then the Court may require that Woods prove that inability through disclosure of his financial condition."

An appropriate Order will be entered (i) requiring Woods to deposit the remaining balance, with the Clerk of Court within 30 days of the Order and, as recommended by the Master; (ii) requiring Woods to prepare and file with the Court and the Master a complete listing of all assets which he holds either individually, jointly with any other person or corporation, or which may be held in the name of any corporation in which he has an interest and whether or not such assets are titled in his name or in the names of another or whether under veiled or pseudonym names. Such assets are not to be limited to real property, but to include all real and personal property, whether corporeal or incorporeal, including but not limited to choses in action. Such list of assets is to be filed within 30 days of the date of this Order; and (iii) providing that should Woods fail to comply with this Order of Court, then in that event he shall be committed to the custody of the U.S. Marshal to be imprisoned until such time as he complies with the Order.

*Findings—Master's Second Report*

1. The Exceptions of Geisler to the Master's Second Report are denied.

■ 2. The Court finds that Geisler is in technical violation of the Order of July 26, 1989. However, the Court finds that Geisler has made a substantial effort to comply with the Order.

3. Because Geisler is performing services on the remaining cases of Hudak without compensation and because of the technical nature of his violation of the Order, the Exceptions will be dismissed and an Order entered (i) requiring Geisler to file a report containing the information required by the Master with regard to the divorce and bankruptcy cases he is completing in conformity with the original consent Order of October 8, 1987; and (ii) that Geisler shall make the files for those cases available for inspection by the Master at a time and place directed by the Master.

However, no sanctions, including charges or costs or attorneys' fees shall be assessed against Geisler.

"15. The alleged disbursement of $80,000.00 was done with the approval of the Defendant's wife, Geraldine E. Woods, and was paid out of her account.
"16. The payment of the daughter's mortgage payments was done by the Defendant's wife, Geraldine E. Woods.
"17. The payment of the grandchildren's tuition was done by the Defendant's wife, Geraldine E. Woods.

"18. The Defendant does have a wide latitude in managing his wife's businesses, but under no circumstances does he have her approval to disburse $10,000.00 for solely his own benefit. The Defendant's wife, Geraldine E. Woods, refuses to pay the $10,000.00."